Good morning. May it please the court, my name is Katherine Pomeroy, counsel for Mr. Anant Tripati. And first, thank you for your pro bono representation and for coming out here from Washington. Pleasure to be here. May I ask you, if you were to prevail on this appeal, would you continue to represent your client in the district court? Your Honor, that would be a question that I would need to ask my law firm before I could firmly commit to his further representation. Thank you. You may proceed. I ask to reserve four minutes for rebuttal. When invoking its inherent authority to dismiss Mr. Tripati's case as a form of sanction, the district court abused its discretion by misapplying the multi-factor test set forth in Jaleco Engineering v. Kossel. The district court erred in four ways. First, an insufficient nexus exists between the misconduct found by the district court and the allegations central to Mr. Tripati's complaint. Second, at no point in time did the district court explicitly consider lesser alternative sanctions and discuss why those lesser sanctions would have been inappropriate. Third, Mr. Tripati's actions did not cause the type of prejudice that warrants the extreme and disfavored remedy of dismissal. And finally, the district court erred by applying an objective standard to the willful deceit and extraordinary circumstances factors rather than a subjective bad faith standard. Collectively, these numerous errors demonstrate that the district court exceeded the limits of its discretion and that this court should reverse the dismissal sanction. Turning to the nexus factor, which this court has previously said in Jaleco is the most critical criterion, this is a due process consideration. Therefore, nexus must exist between the misconduct found by a district court and the underlying elements of a plaintiff's complaint. So what is he asking for in this case? He lists a whole host of medical issues and basically says, and there are more. Later on in pleadings that relate to the typewriter, he says, Corazon caused this problem, the medical condition that caused my blindness. Do we know for sure whether or not he's actually asking for damages or seeking relief as a result of his alleged vision problems? He has never expressly sought any sort of damages related directly to his vision. It is true that he says his vision stems from some of the elements alleged in his complaint, such as neuropathy and high blood pressure. But ultimately, what he's really asking for is adequate provision of medical care. He does ask for a blanket sum of money in his complaint. I mean, it's difficult for me to say, no, he's not asking for any damages based on his vision when he says elsewhere, ADOC and Corazon created my medical condition. They are not looking at all medical reasons that have caused my blindness. And he says there's something wrong with my vision, and it started after my blood pressure was not checked and I was provided meds for pain that didn't work. So do we know at this stage whether he's really asking for relief based on his vision or not? I would posit that most directly he's not. He is asking for relief for the underlying medical connections, and so the vision is something that's sort of a separate issue arising from that. But ultimately, he is seeking better treatment of his medical care, and everything related to his vision was really an attempt to gain access procedurally to a voice-activated word processor. So he's asking for damages based on all this, or remedial measures in terms of injunctive relief, or do you know? He's asked for both. I believe he asked for $250,000 in his first amended complaint, and he has asked for better provision of medical treatment as well as filing various papers below for inductive relief. Right. And I realize we are here at a different stage, but what's his theory of liability? He filed a Section 1983 claim. No, I understand that, but do you know what he's actually alleging that they did wrong? Some of it is fairly detailed, Your Honor. So, for example, there's certain medication that's been diagnosed that he should be taking, but the medical providers at Corizon are not allowing him to take them at appropriate times. They're splitting his pills apart. And so it does get rather detailed depending on the particular elements. Right, I saw the pill-splitting allegations and so forth, but I just didn't quite follow all of them. There's also many diet-related issues as well, that he's not receiving a proper diet. He has medical allergies, but at the same time, he has various religious restrictions on his ability to eat meat. And so in Jaleco, ultimately the standard that this Court has previously set forth previously, is that a nexus exists only if it interferes with the rightful decision of the case. And what the District Court did here, and what defendants have advocated, is to cloak all of this under this shield of medical issues or medical problems, and that Mr. Tripati's misconduct related to medical issues, so too does his complaint, and therefore, a nexus exists. But we're really in a gray area here where it's not, there must be a much more direct connection between the misconduct and the allegations in the complaint. So in Jaleco, it wasn't enough just to say there were environmental issues. What the Ninth Circuit previously said was the misconduct related to hazardous waste elements in a doctored report that the EPA had submitted, and that was not a close enough nexus to the actual merits of the counterclaim, which related to whether or not particular property at issue were wetlands. And so similarly here, you can't just continue to take all of these jumps to say, well, first he's alleged medical issues, then those medical issues have led to his vision, then he had misconduct, the District Court found about his vision. There's a number of steps that both the District Court and the defendants would have to take in order to find nexus, and never before has this Court made such a chain link connection. There's always been a much more direct bridge between the underlying merits of a complaint and the misconduct before the Court. Not only are Mr. Tripati's vision claims with which the District Court found to be his misconduct, not only are those sort of a different substantive issue, but really we're talking about procedural issue versus a substantive issue. So Mr. Tripati attempted to, at best, gain a procedural advantage. Instead of having to handwrite every single thing that he would file before the District Court, he wanted access to a voice-activated typewriter. His underlying complaint is completely different, and it's about the adequate provision of medical care, as I've previously stated. And so if he had filed a lawsuit saying that Corizon improperly took his previous typewriter away, that would be something that would create an adequate nexus. But here, again, we just have such completely different elements between the misconduct and the underlying allegations that nexus is a critical basis upon which this Court can alone reverse the dismissal sanction. But that's not the only error that the District Court committed. The District Court also failed to discuss lesser alternative sanctions. And what do you think those would have been? I mean, in a normal case, you could look at monetary fines, but that's not available really against a pro se prisoner. I think the most appropriate alternative sanction here would be some sort of adverse inference instruction. And that's something that courts have considered. Some sort of what? An adverse inference instruction. So if and when the case were to proceed before a fact finder, the judge could say, I made a previous finding about Mr. Tripati's credibility. I found him to be not credible in a filing that he presented to the court. And so that would be something that. A case that says that's an appropriate sanction? I do. It was a. . . Because that actually interferes with the merits of the case as well. In Pettit v. Smith, the plaintiff there, it was a spoliation of evidence issue, so it was a little bit different. Yeah. In Pettit v. Smith, the plaintiff had asked for an adverse inference instruction. Basically instructing the jury that the prison had acted with excessive force. And the district court said, no, that's effectively directing a verdict. But what I will do and what I can do is explain, here are the procedures that the prison needed to follow in order to maintain the records. Right. I understand spoliation. I don't think I've seen a case in which that instruction was given as a sanction for discovery problems. So leading that aside, are there other alternatives that you think the district court should have considered? And what are they? In a footnote in Malone, and, again, this is less ideal, perhaps of a lesser sanction, one possible remedy offered by this court was that a case could be put to the bottom of the docket. So that that would be a way to effectively penalize Mr. Tripati in pressing his case, is that it would sort of get a bit of a deprioritized status. So that's another example of a lesser alternative sanction that the court could have considered. Of course, while monetary sanctions here are probably not the most appropriate remedy, that, again, is something that the court could have and, frankly, should have considered and perhaps rejected it. But here you have simply a conclusory single-line statement where the court said, I conclude that nothing is going to be a better sanction. If you prevail and get your $250,000, I'm going to take half of it for the benefit of the court. I think Mr. Tripati would be delighted. I did speak with him about this issue. He would be delighted to press his cause, and he has, again, he definitely feels like. Well, that was just a creative idea. Yes. An offset, an offset against the million. You're down to about 30 seconds. Do you want to summarize or use your time the way you want to? Yes. So not only did the court fail to meet the nexus element or the lesser sanctions element, which in Lujan this Court has said can be a fatal flaw in the issuance of a dismissal, but the prejudice that the court found here, which was simply just litigation expenses delay, frankly, some of which was caused by defendants themselves in the United States for use and benefit of Wiltec-Guam versus Kahalu, this Court said that, you know, although delays may cause serious inconvenience and although you may have to press your cause in another district, these are not enough for prejudice. Ultimately, prejudice is where you're really hindering the ability to bring forth your case. And finally, on the prejudice prong, the Court here really relied on the objective medical evidence, which is not something we're disputing here, but did not dig below the surface and say what was the subjective intent that Mr. Tripati had. And this Court has previously said that looking at subjective bad faith and other elements when ordering penalties, you really need to look for wrongful purpose or malintent. Again, here Mr. Tripati was simply trying to gain access to a typewriter. There was no malintent in trying to hinder defendants' ability to press their defense. Thank you, Counsel. May it please the Court. My name is Jack Kleken on behalf of Khoraisen and the Appellees. I'd first like to address the last point Counsel made, and that's about willfulness and the subjective versus objective status of proof. And actually, one of the cases she cites answers this in our favor. And the case is In Re Su, and you will see in footnote six of In Re Su, the Court specifically stated that you don't have to rely on the appellate, in this case, inmate, admitting fault. If the objective evidence shows that to be the case, then that's proven. And so we can't simply say because I subjectively will not agree that I lied to the Court doesn't mean that the Court can't determine that he lied. And in this case, the Court made that determination. The Court looked at the objective evidence, which included three different eye specialists and an MRI, and looked at the documents that he had submitted, which the doctor, Dr. Ripson, said you can't fill those out the way he filled them out if you're blind, because he stayed in the lines, he filled in the boxes. So all of the objective evidence showed that he was lying about this. And just to minimize it, but to say, well, that's just, it's just all about getting a typewriter, completely misses the point. The point is, he was lying about his medical condition. The Court concluded that how can I possibly do anything less than this sanction because, and what's evident from what transpired, is his medical condition throughout this litigation, even if it relates to the eyes or if it relates to his back, relates to renal failure, whatever he's claiming, pain and suffering primarily, and inability to walk, are all based upon his subjective symptoms. His subjective symptoms are a component of that. And so when the Court concludes that he's gone to this elaborate scheme about lying about not being able to see by submitting scrawled documents and by claiming I can't see, and when that's completely proven to be wrong, then how can the Court say we can accept anything this man says in the rest of this litigation? And so that's what this is all about. Now, the curious thing to me is, unfortunately, the way the briefing was done, it's almost as if the Court was being asked to decide this case in 1995, because the briefing never addressed Valley Engineers. The brief submitted by Mr. Tripathi's counsel says, if the Court fails to explicitly address each of the four components, then the Court can reverse on any one of those. And Valley Engineers says otherwise. Valley Engineers says, we don't mean them to be mechanical applications. These are guidelines for the Court. And Valley Engineers has gone on to be cited both by a member of this panel and I have trouble pronouncing it, the PPA case. There's a PPA product liability case. And in that case, this Court stated about those requirements and conditions that these were not conditions precedent to a dismissal, that they are matters for the trial court to consider. And this trial court said and laid out in his opinion that he did, in fact, consider them. The interesting thing about PPA is that it goes on to talk about what is prejudice and indicates that costs of litigation can be the prejudice that's required to support a dismissal. So in addition, I would say about Valley Engineers this, and that is that it's been cited over 500 times by subsequent courts, this court many times, but many more times by the district level throughout the Ninth Circuit. So we submit that the premise or the construct of plaintiff's appeal, the inmate's appeal, is no longer valid. And that under Valley Engineers, the question is for you. But we've continually enunciated those factors going back to Felstead and starting in 1985 and up to the present. So, I mean, the factors are there. Oh, for sure. I tend to agree with you that it may not be fatal if the district court doesn't really expressly consider all of them, but the factors are all there. Absolutely. So why don't we talk about those? Okay, I will. And I would add, and the court has repeatedly expressed the preference that the district courts elucidate those factors. Right. I mean, that makes an appellate record from which we could. No. I mean, the court said that no lesser sanction is appropriate. Right. And, yes, you don't have an explicit. But you can look to the record yourself. Well, what alternative sanctions? There isn't any. I mean, the only sanction I could come up with would be to tell the jury that Mr. Tripathi cannot be believed on any time he expresses a subjective symptom. But that's case dispositive. And so there really isn't any other. Or to allow, even though it may not be directly germane to the medical condition, assuming it's litigated, to allow testimony that he submitted or evidence that he submitted false testimony. Well. I mean, that's a potential sanction. That is a potential sanction, but it doesn't really address the gravity of the offense. Because this is – I mean, when you talk about it. Would you agree that if somebody lies about something that's entirely collateral to the complaint that that's an insufficient nexus to dismiss it? Absolutely. So isn't the question here whether it's entirely collateral? Yes. And counsel does not cite to you a single case that defines this being collateral to the main issues of the case. We think it's essential to the main issues of the case. That's what Judge Burry found. He said that this is about the medical condition, which is the core of the complaint. And so he made that finding. That's the case, counsel. I don't understand your last answer. I thought you were saying a line about the typewriter undermines his credibility about any part of his medical condition. So why wouldn't an instruction be a lesser sanction to foreclosing him at all? Because I can't conceive of an instruction that would accomplish that. What? That he lied about one of his alleged medical conditions, so you should treat his testimony with skepticism? Well, because it doesn't go far enough, because it isn't simply that he just lied about it. It is that he kept doing this repeatedly and to this day has never admitted that he lied. You're arguing, it seems to me, why you think it's insufficient, but the district court didn't grapple with it. So we don't know what the district court would have come up with. What we do know is the court summarized what his opinion was. He summarized it by saying— Counsel, I've read it. But we don't know specifically whether he even considered what you're advancing. You're right, in the sense that because it's not explicit, and that's why you have the preference that the district level does explicitly state it. But you're allowed to look at it. And then the challenge for you is to say, do you have a firm and definite conviction that Judge Bury exceeded acceptable sanctions in issuing this order? That's the clear and convinced—that's the abuse of discretion standard. And I submit to you that they have not shown that. And Judge Thomas's question to the appellate is a perfectly appropriate one. What is the appropriate sanction? And is there such a sanction that's ever been shown up in the cases? I haven't found one, but that's the issue. So let me address the prejudice issue, if that's an issue for the court. And that is this. As it appears in U.S. v. Sierra Pacific, the prejudice of a fraud on the court is not simply to the litigant. It's to the court. And in this case, that's what you have. And Malone talks about that. Anheuser-Busch talks about that, that there's no— after somebody has done something this wrong, this calculated, there's no assurance that in the rest of the proceeding, the court is going to get to the truth. Because you have a litigant who's—the court has determined, gone out of his way to perpetrate this fraud. And it really is—if you think about fraud on the court, what greater fraud on the court could there be than to say, I'm blind? You know, it seems to me it's different than most of the cases. Most of the cases are a doctor did a document. They changed a document, did this, did that. But in this case, you have somebody— I think you do have to look at what the object of his fraud was. I mean, you make it seem like it was such a terrible thing. All he wanted was a typewriter. You know, that's not the end of the world. And in order to get a typewriter, he lied about his health. But I don't think you can look at this as in the abstract of— it's a horrible fraud. The court was just, you know, put to the most awful lengths. You know, if they'd given him a typewriter, it would have been okay. Well, he had had a typewriter before. It was taken away. And then he claimed he couldn't see. And he submits all these illegible documents. And then the court— But it is a pretty collateral issue if you look at it in the context of what he was trying to achieve by this. He was trying to achieve getting a typewriter. So he lied in order to get a typewriter. That's not necessarily the same as lying in order to try to get $250,000. That would be a different kind of fraud on the court. Well, I think this is what the court was facing, is here's this issue about the typewriter. And what does this tell you about this litigant? Not a lot. You know, people do lie in court. One side is frequently lying. And I don't want to sound cynical about the legal process. I thought you did. But it's not that unusual. And we usually don't take away the whole case because someone lies about a collateral matter. Absolutely. And this court has said perjury alone is not enough. That appears in some of the opinions. But what we have here is something more—you know, this is way beyond just simple perjury. This is somebody playacting to be blind in order to accomplish this purpose. You do a good job of being— We're going in circles here. You do a good job of being indignant about this. I admire you. Thank you. I was hoping you would be as well. Well, you know, I'm sympathetic with the district court because this prisoner lied on many occasions. And that's just what—the nexus problem is a little closer issue. It is. I agree. And I've been doing personal injury litigation for 40 years. I'll tell you how this comes up in personal injury litigation. And that is if a plaintiff has a prior treatment that they failed to disclose. That often results in a dismissal of the whole case, even if, let's say, they are claiming back injuries and head injuries in the present case and there was a prior head injury that was not disclosed. When the court hears that, the whole case gets dismissed, not just, okay, we're just not going to let you proceed with a head injury. And so I think that's what's happening here. It depends on the jurisdiction, I would say, on that particular issue. It may. It may. But the curious thing about this case is that we have, independent of all this, we have all these initiatives to try to get prisoners to be able to produce legible pleading so that we can, as a court, deal with them. And this case is all about saying you can thwart somebody from producing legible documents. And if he tries to engage in misrepresentation so he can submit legible documents to the court, then somehow we should dismiss the case. That on one hand. On the other hand, I will say that there's a lot of medical expense trying to prove him to be a liar and not much in the record about what they did to deal with his real problems. Well, the problem is there was no real problem. The finding of the court, which really is uncontested except if you accept the willfulness objective thing, is he was faking it. And the courts put through a year and a half of litigation. There's over 200 document entries on this case. Put through all of that on what is clearly fraud on the court. And so if somebody does that, are they allowed to keep going? That's the question. And you can say, oh, it's just about the typewriter. Well, it's not because it's what he did. It's not what was the object of what he did. But it's what he would do. And Anheuser-Busch was in a similar case. In Anheuser-Busch, Ms. Beardsley, the court concluded, would do anything to avoid admitting that she knew the documents survived the fire. Mr. Tripathi has evidenced that same behavior. And when faced with that behavior, the court has the authority to do what it did. I really think what it comes down to is the seriousness of the offense, the seriousness of the act, not what was he trying to accomplish by that, but if he will go to those lengths and require three different doctors and an MRI and still say, I can't see, even though the court has found otherwise, I submit to you that the seriousness of the offense takes it way beyond most other cases. And I think that's what constitutes the extraordinary circumstance here and justifies what the trial court did. So you are over your time, but if you have another quick point to make, I'll allow it. Oh, I'm sorry. I misread the clock. Okay. I misread the clock. I'm happy to answer any further questions if the court hasn't. We'll have rebuttal. Thank you, Your Honor. Thank you. This court previously asked if any cases had previously issued an adverse inference instruction. In the Frank Brunkhorst case. As a discovery sanction. I'm sorry? As a discovery sanction, basically. Yes. However, I would like to direct this court's attention to, so the magistrate judge's opinion is what's cited in the briefing. When the district court adopted the magistrate judge's opinion in the report and recommendation, the district court said, I agree, we should not be having an extreme sanction here because it's not going to the merits of the case, but also we should be issuing not only monetary sanctions but an adverse inference instruction as well. And that record citation is 2013 Westlaw 12094827. The name of the case? It's still the Frank Brunkhorst case, Your Honor, but it's the district court adopting the magistrate judge's report and recommendation. Okay. So I think here we've spent a lot of time talking about the prejudice element and the nexus element, which at times tend to overlap because the standard here is not just how bad or how willful or potentially deceptive was a particular party, but whether that deceit actually threatens to interfere with the merits of the case. And so in Sierra Pacific, which defendants cited in their 28J letter, and as acknowledged by defendants, that not every single type of perjury is something that rises to the level of being fraught on the court. If you look at the language there where they're interpreting the 60B case. That's correct. It is a different case. But it's helpful in the sense that, again, time and time again, this court has said. That was after a settlement. So, I mean, we were farther down the road. Correct. But there's a consistent standard here, both in the 60D3 cases and the cases here where you're looking at dismissal sanctions where you say, again, does it threaten to undermine the workings of the adversary process itself? And we can look to Fosanay, which was a dismissal sanction case, and in Fosanay, again, there was an emphasis on, even though there was willful deceit found by the district court, reluctantly, the Ninth Circuit said just because there's willful deceit does not mean that there's fraud on the court under the standards set forth in Jaleco and all of the other cases that describe the various elements that must be presented. So here, you know, taking the multi-factor test as a whole, where you have issues with the nexus element, where you have the fact that there was no explicit consideration of lesser sanctions, where you have the fact that, you know, it's possible that the district court perhaps could have made a subjective – a finding of subjective bad faith. The court didn't do so here. It basically spent one page summarily dismissing Mr. Tripati's case. And for those reasons, I ask that the court reverse the dismissal sanction and reverse the case to the district court for further proceedings. Thank you, counsel. Thank you both for your arguments today. They've been very helpful to the court. And we'll take a ten-minute recess.
judges: Reinhardt, Thomas, Fisher